IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

MARY M. GREENE,

   Petitioner,

v.          Case No. 6:08-cv-00294

ADRIAN HOKE, Warden,
Lakin Correctional Center,

   Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

  Pending is Respondent's Motion for Summary Judgment (# 8). This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY AND PETITIONER'S CLAIMS FOR RELIEF[1]

### Petitioner's criminal proceedings and direct appeal

  During the January 2004 term, Petitioner was indicted by a Wood County Grand Jury on five counts of Uttering (State v. Greene, Case No. 04-F-24). (# 8, Ex. 1).

---

[1] As noted by Petitioner in her Response in Opposition to Respondent's Motion for Summary Judgment (# 10), Respondent's Memorandum of Law in Support of the Motion for Summary Judgment contains several errors concerning the procedural history of Petitioner's criminal and habeas corpus proceedings. This recitation of the procedural history contains the correct dates of those proceedings.

Following a jury trial conducted on August 3-4, 2004, Petitioner was found guilty of Counts Two through Five as contained in the indictment.  Petitioner subsequently pled guilty to Count One of the indictment in a separate proceeding on September 21, 2004.  By order entered on October 5, 2004, Petitioner was sentenced to consecutive terms of one to ten years each on Counts Two through Five, and a one to ten year term on Count One, which was ordered to run concurrently to Counts Two through Five.  (Id., Ex. 3).

Petitioner, by counsel, filed a Petition for Appeal in the Supreme Court of Appeals of West Virginia (the "SCAWV") on February 15, 2005, asserting the following grounds for relief:

1. Appellant contends that the Court erred in denying Defendant's motion for judgment of acquittal made at the conclusion of the State's evidence and renewed at the conclusion of all the evidence.

2. Appellant contends that the verdict of the jury is contrary to the weight of the evidence.

3. Appellant contends that the verdict of the jury finding the Defendant guilty as charged is not supported by substantial evidence.

4. Appellant contends that the Court erred in admitting in evidence before the jury testimony related to all evidence seized at Defendant's residence pursuant to a search warrant upon grounds set forth in Defendant's Motion to Suppress and on the basis that a city police officer does not have the authority to execute search warrants outside of the municipal jurisdiction.

5. Appellant contends that the Court erred in admitting in evidence copies of checks and other documents contrary to the Best Evidence Rule.

2

6.   Appellant contends that the Court erred in not granting Defendant's Motion for Mistrial.

7.   Appellant contends that the Court erred in admitting into evidence all exhibits objected to by Counsel for Defendant.

8.   Appellant contends that the Court erred in denying the Defendant's instructions to the jury.

9.   Appellant contends that she received an excessive sentence based upon the nature of the crime and the facts of this case and also her sentence is disproportionate to the severity of the offenses charged.

(Id., Ex. 4).  The SCAWV refused the Petition for Appeal on May 9, 2005.  (Id.)

Petitioner's state court habeas corpus proceedings

On November 21, 2005, Petitioner filed a pro se Petition for a Writ of Habeas Corpus in the SCAWV, under its original jurisdiction.  The SCAWV issued a Rule to Show Cause returnable to the Circuit Court of Wood County to consider Petitioner's habeas corpus petition.[2]  The pro se habeas corpus petition was filed in the Circuit Court of Wood County on March 6, 2006.  Counsel was subsequently appointed to represent Petitioner in that matter, and an Amended Petition was filed on October 18, 2006.  (Id., Ex. 6 at

_____

[2] This petition and the SCAWV's order are not contained in the exhibits provided by Respondent.  However, this fact is referenced by the Circuit Court of Wood County in its Opinion Order Denying Petitioner's Writ of Habeas Corpus Following Omnibus Hearing (# 8, Ex. 6).  Also, Petitioner has provided a copy of the SCAWV's order issuing the Rule to Show Cause and her Amended Petition filed in the Circuit Court of Wood County within Attachment 3 to her federal petition.  (# 2, Attach. 3).

2).   The claims for relief contained in the Amended Petition were:

    1.    Ineffective assistance of counsel.

    2.    Petitioner's conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure.

    3.    Insufficient evidence to support a guilty verdict.

    4.    Petitioner's plea to Count One of the indictment was not voluntary.

    5.    Petitioner's sentence was excessive and disproportionate to the severity of the offense charged.

    6.    Additional grounds raised under Losh v. McKenzie so as not to be waived:

        a.    Prejudicial pretrial publicity;

        b.    Petitioner's mental competency at time of crime;

        c.    Petitioner's mental competency at time of trial;

        d.    Denial of counsel;

        e.    Unintelligent waiver of counsel;

        f.    State's knowing use of perjured testimony;

        g.    Information in pre-sentence report erroneous;

        h.    Double jeopardy;

        i.    Irregularities in arrest;

        j.    Excessiveness or denial of bail;

        k.    Challenges to the composition of the grand jury or its procedures;

        l.    Refusal to subpoena witnesses;

     m.   Lack of full public hearing;

     n.   Additional instructions to the jury;

     o.   Claims of prejudicial statements by trial judge;

     p.   Additional claims of prejudicial statements by prosecutor;

     q.   Sufficiency of evidence;

     r.   Petitioner's absence from part of proceedings.

(# 2, Attach. 3).  An omnibus hearing was held on November 22, 2006.  (<u>Id.</u>, Ex. 9).  An "Opinion Order Denying Petitioner's Writ of Habeas Corpus Following Omnibus Hearing" was entered by the Circuit Court on March 2, 2007.  (<u>Id.</u>, Ex. 6).

<u>Petitioner's state habeas appeal</u>

On July 11, 2007, Petitioner filed a <u>pro se</u> Petition for Appeal from the denial of her Wood County habeas corpus petition in the SCAWV, asserting the following grounds for relief:

1.   The Circuit Court of Wood County erred in its opinion and ruling the Petitioner failed to establish a basis for the relief requested in the original Petition for Writ of Habeas Corpus [specifically citing within this claim for relief Grounds 1, 2, 3 and 5 of his Circuit Court petition].

2.   The Petitioner's Writ of Habeas Corpus was fully supported by WV statutes, Constitutional guarantees, and case law that the court overlooked during its review of the Petition for Writ of Habeas Corpus.

3.   The Circuit Court of Wood County unfairly prejudiced the Petitioner by denying a motion for default judgment, upon failure of the Prosecutor to

timely file state's answer within court ordered timeline.

(<u>Id.</u>, Ex. 7).  The SCAWV refused the petition on February 22, 2008.

(<u>Id.</u>)

### Petitioner's federal habeas corpus petition

On May 6, 2008, Petitioner, proceeding <u>pro</u> <u>se</u>, filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, alleging the following grounds for relief:

1.  Lack of jurisdiction.

1a.  Ineffective assistance of counsel.

2.  Insufficient evidence to support a guilty verdict.

2a.  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

3.  Insufficient evidence to support a guilty verdict.

3a.  Trial court erred in denying defendant's motion for a mistrial.

4.  Insufficient affidavit to obtain a search warrant.

5.  Challenge to grand jury proceeding and testimony.

5a.  Petitioner's sentence is excessive and disproportionate to the severity of the offense charged.

6.  Cumulative errors (which denied the defendant her constitutional rights of equal protection under law, due process, a speedy trial, against unreasonable searches and seizure, no warrants shall issue but upon probable cause, against cruel and unusual punishment).

(# 2).  Petitioner's brief in support of her petition only addresses Grounds 1, 2, 3, 4 and 5 (it does not address any of the

grounds ending in "a.") (<u>Id.</u>, Attach. 1).

On June 27, 2008, Respondent filed a Motion for Summary Judgment, with an accompanying Memorandum of Law and exhibits (## 8 and 9).  Respondent's motion also only addresses Grounds 1-5, without addressing the grounds ending in "a."  (<u>Id.</u>)

On July 21, 2008, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment (# 10).  On August 8, 2008, the undersigned entered an Order advising Petitioner of her right to file an additional response to Respondent's Motion for Summary Judgment, in accordance with the holding in <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), and setting deadlines for a response and reply.  (# 11).

On August 25, 2008, Petitioner filed a Response to the Court's Order with a request for appointment of counsel and an evidentiary hearing.  (# 12).  Respondent did not file a reply.  This matter is ripe for determination.

## FACTUAL BACKGROUND AND TRIAL TESTIMONY

A pre-trial motions hearing was conducted on July 6, 2004. During that hearing, the trial court severed Count One from the remaining counts of the indictment for trial because it involved a different victim.  The trial court also heard evidence on Petitioner's Motion to Suppress concerning the search of her home. Detective Joe Martin, the lead investigating officer on Petitioner's case was the only witness during the suppression

hearing.   Following Detective Martin's testimony, Petitioner's counsel, Carl Bryant, argued that Detective Martin did not have authority to execute a search warrant outside the city limits of Parkersburg.  Mr. Bryant also argued that, during the suppression hearing, Detective Martin relied on evidence that was not presented to the magistrate who issued the warrant, in order to support a finding that there was probable cause for the issuance of the warrant.

Mr. Bryant also argued that four receipts for purchases made at Lowe's, Wal-Mart, and Office Depot, which were allegedly found in Petitioner's purse, should be excluded because Detective Martin failed to include them on the inventory of items seized, which was left with Petitioner.  However, Detective Martin testified that, after discovering the receipts in his coat pocket, he amended the inventory, prior to returning it to the magistrate who issued the search warrant, and also mailed a copy of the amended inventory to Petitioner.

Mr. Bryant also argued that any statement made by Petitioner during the search process be suppressed because Petitioner was not advised of her Miranda rights.

After also hearing argument from the prosecutor, the trial court made the following rulings:

> THE COURT: Well, like Mr. Francisco, I didn't know the jurisdictional issue was going to be raised.  I think we need to look more into that.

8

As far as the search warrant, Mr. Francisco conceded it could have been worded better, but that's twenty/twenty hindsight.

But looking at the affidavit, I think it hits all the issues that need to be hit, describes the property with particularity, and I'm not concerned about the receipt issue. Apparently, a receipt was issued before the officer left the presence of the Defendant. It was handed to the Defendant. And then he quickly amended it when he realized he'd made a mistake and left off the four receipts - two from Wal-Mart, one from Lowe's and one from Office Depot. So that issue I'm not concerned about.

As to the statements or non-statements of the Defendant, I fail to see the relevancy of those and how they would go to -- have probative value as to the guilt or innocence of the Defendant. So I believe the statement or non-statements of the Defendant are inadmissible.

But other than the jurisdictional issue, I believe the affidavit was properly done, both procedurally and on the face of it. It does talk about Mary M. Greene and specifically says who the suspect is and does say Route 3, Box 176, Apartment 17, and certainly if one of the stolen checks from these people was passed at one location and they positively identify her as passing the check, and another check that was also stolen from those same people is passed in another location, you can have probable cause that that person is the same person who passed the other check. So I'm not concerned about that.

And although the grammar may not be correct where it talks about the suspect vehicle, I'm sure that he meant suspect's vehicle, described as a 1997 Toyota Corolla, and gives the VIN number. But that is sufficient in the affidavit to allow the magistrate to issue a search warrant for the Toyota. She did.

Okay. And if any of you want to submit any authority on the jurisdictional issue, you can. Mr. Bryant has cited both statute and rule in support of his position and cited Cleckley. * * * The issue as to the jurisdiction will be submitted, and again, if you want to, you don't have to do anything formal, just send me any authority, case law, statutes, rules that indicate

9

the officer does or does not have jurisdiction to execute
a search warrant outside the corporate limits.

(# 8, Ex. 8 at 62-65).   No formal ruling was made on the
jurisdiction issue prior to or during the trial.

### The State's case in chief

Petitioner's trial began on August 3, 2004.   In its case in
chief, the State called as witnesses, Jeffrey and Sherri Smith, the
couple whose checks were uttered; Angela James, an employee of
Office Depot; and Detective Joe Martin.   Jeffrey Smith testified
that, while he and his wife were on vacation with their children,
he called their bank, Branch Banking & Trust ("BB&T") to check on
the status of a deposit and learned that their checking account was
overdrawn.   (# 8, Ex. 8 at 125-126).   Mr. Smith stated that his
wife usually managed the checkbook, and that, just before leaving
on vacation, he had retrieved a new box of checks from their
mailbox and had given it to his wife.   At that time, he did not
note whether the box had been opened, or how many checks were
inside.   (Id. at 124, 129).

Sherri Smith confirmed that she did most of the check writing.
She further confirmed that they received a new box of checks in
July of 2003, right before they went on vacation.   (Id. at 141-
142).   Mrs. Smith further testified that her husband had retrieved
the box from their mailbox.   She believed that she used one of the
new books of checks to pay bills before they left, but she did not
note how many checks were in the box or the numbers on the checks.

10

(Id. at 143).

Upon returning home from vacation, Mrs. Smith reviewed the box of checks and determined that one of the books of checks was missing. The Smiths further determined that four checks from that book of checks had been used to pay for items at a local Office Depot, two Wal-Mart locations, and a Lowe's, and that Sherri Smith's name appeared on the signature line of those checks. Mrs. Smith testified that she did not sign those checks and that she did not give anyone permission to sign them for her. Mr. Smith also testified that he did not sign the checks and did not give anyone permission to do so.

The four checks were passed on the Smiths' account as follows: Check number 4401, in the amount of $ 164.56, was passed at Wal-Mart on July 13, 2003; check number 4405, in the amount of $125.96, was passed at Lowe's on July 16, 2003; check number 4406, in the amount of #1,261.69, was passed at Office Depot on July 21, 2003; and check number 4407, in the amount of $311.22, was passed at Wal-Mart on July 21, 2003. Receipts matching three of these four transactions were located in Petitioner's purse during a search of her residence[3], and items matching the items purchased were also located during the search. (Id. at 197-198, 204-206, 227-231).

---

[3]  One of the receipts found in Petitioner's purse was for a purchase from Office Depot that was unrelated to the subject transactions.

Angela James testified that she was working at a check-out counter at Office Depot on July 21, 2003, and recalled selling two to three computers on that day. (Id. at 160). Ms. James identified Petitioner as a customer to whom she sold a Toshiba computer and some related software and equipment on that day. Ms. James testified that she remembered Petitioner's purchase because, at the time, she believed that the store only had one of that particular model of computer, which was the display model. Ms. James further testified that Office Depot offered a discount on display models, which is what caused this transaction to stand out. (Id. at 171-172).

Ms. James further testified that she subsequently learned that the store had received a new shipment of that model of Toshiba computers, but because she had promised Petitioner the discount, she sold it to her at the discounted price. (Id. at 172-173). Ms. James further testified that Petitioner attempted to pay for the computer and other items with a credit card, which was declined, so she wrote a check. Ms. James admitted that, although she requested identification from Petitioner, she took the check without receiving confirmation of Petitioner's identity. (Id. at 174-175, 186-187).

Ms. James further testified that she was asked by the police to review a photographic lineup, at which time she identified Petitioner as the customer who purchased the computer and some

12

other items at Office Depot on July 21, 2003. (Id. at 161-164).
Ms. James stated that she specifically remembered Petitioner as the
customer whom she waited on because Petitioner had a brace on her
hand, and Petitioner talked to her about a prior transaction that
Ms. James had handled for her a few weeks before. (Id. at 171,
188-189). On cross-examination, Ms. James admitted that Petitioner
frequently shopped at the Office Depot, and that there was a
possibility that she had confused the dates upon which she had seen
Petitioner. (Id. at 187-188).

Detective Joe Martin testified about his investigation of the
uttering charges. Detective Martin testified that he contacted
BB&T about recovering the original checks that had been written on
the Smiths' account. He stated that he was advised that the
processing center for BB&T is located in North Carolina, and that
they could not provide the original checks, but they could provide
copies of both the front and back of the checks. Detective Martin
also received copies of the checks from the Smiths. (Id. at 193-
194).

Detective Martin further testified that the copies of the
checks were difficult to read and that the information on the back
of the checks, in particular, was not legible. Thus, an employee
of BB&T had to assist him in deciphering that information. He
further stated that, with the employee's assistance, he was able to
decipher the different locations where the checks had been passed.

13

(Id. at 193-196).

Detective Martin further testified that he inquired of each location where the checks had been passed about whether they had any surveillance equipment that might show the activity that occurred at each store around the time of the subject transactions. He stated that, although the South Side Wal-Mart had a few cameras that monitored the checkout lanes, there was no recording of the subject transaction on July 13, 2003, because it occurred in a checkout lane that was not monitored by a camera. Furthermore, no Wal-Mart employees were able to recall the specific transaction. (Id. at 197).

At the Lowe's, where another of the Smiths' checks was passed, Detective Martin was able to obtain a video of that particular transaction from the loss prevention employee at the store. Detective Martin testified that he took the video and was able to view it on a machine they had at the police department, but the video could not be played on a regular VCR. Thus, an employee of the police department took the video and made still photographs from segments of the video for use at trial. (Id. at 198-200). Although the pictures were somewhat blurry, Detective Martin testified that the customer in the subject transaction had a similar appearance to Petitioner at that time and that the customer was wearing a brace or some other device on her left hand in the pictures. (Id. at 201-204). These pictures were admitted as

14

exhibits at Petitioner's trial.

Concerning the transaction at Office Depot, Detective Martin testified that he interviewed Angela James and showed her a photographic lineup from which she identified Petitioner as the customer who purchased the Toshiba computer and other items. (Id. at 204-206).

Detective Martin also testified about the search that he and Detective Nangle conducted of Petitioner's home and vehicle.  He stated that, during the search, they located a Toshiba computer, which was the same model as that purchased at Office Depot with the Smiths' check, inside a dryer in Petitioner's residence.  They also located some software in an Office Depot bag in Petitioner's bedroom. (Id. at 206-231).

Detective Martin also testified that he located receipts from Lowe's, Wal-Mart, and Office Depot that matched the subject transactions in Petitioner's purse. (Id. at 226-231).  Detective Martin stated that he put the receipts in his pocket.  Before leaving Petitioner's residence, Detective Martin provided Petitioner with an inventory of the items they seized pursuant to the search warrant.  That inventory did not include the four store receipts.  However, upon later discovering the receipts in his pocket, Detective Martin amended the inventory, provided the amended inventory to the magistrate who had issued the search warrant, and mailed a copy of the amended inventory to Petitioner.

(<u>Id.</u> at 201-212).

Petitioner's counsel had an opportunity to cross-examine each of these witnesses.   During his cross-examination of Detective Martin, Petitioner's counsel asked the detective if he had taken a handwriting sample from Petitioner.  Without saying anything more, Detective Martin stated that he already had a sample of Petitioner's handwriting at his office.  (<u>Id.</u> at 251-253).  Outside the presence of the jury, Petitioner's counsel moved for a mistrial on the basis that Detective Martin had implied that he had previously investigated or arrested Petitioner.  The trial court found that Detective Martin's statement was not unduly prejudicial, as he had not said anything about prior charges or investigations, and that Petitioner's counsel had invited the statement with his question.  Thus, the court denied the motion for a mistrial and did not give any limiting instruction to the jury concerning the statement.  (<u>Id.</u> at 252-255).

<u>Petitioner's case in chief</u>

Petitioner and her mother testified during the trial. Petitioner testified that she purchased the Toshiba computer and the related software at a trade show at the Charleston Civic Center.  (<u>Id.</u> at 270, 285-286).  Petitioner denied that she put the computer in her dryer and suggested that Detective Martin put it there in order to frame her for the crimes.  (<u>Id.</u> at 292-293). Petitioner further denied that she was the person who passed each

of the subject checks from the Smiths' checking account.  (Id. at 274-275).

### State's rebuttal

The State called Detective Greg Nangle as a rebuttal witness. Detective Nangle testified that he assisted Detective Martin with the search of Petitioner's residence and that he was the one who found the Toshiba computer in Petitioner's dryer.  (Id. at 302-307).  He further testified that he was present when Detective Martin found the receipts in Petitioner's purse and that Detective Martin did not place them in the purse.  (Id. at 307-308).

### Testimony at omnibus hearing

An omnibus hearing was held on Petitioner's Wood County habeas corpus petition on November 22, 2006.  During the hearing, testimony was taken from Petitioner and Donna Davis, the planning director for the City of Parkersburg.  Ms. Davis was called as a witness for the State to testify about the annexation by the City of Parkersburg of the locations of the Wal-Mart and Office Depot stores where the check uttering had occurred.  Ms. Davis testified that both of those locations were part of the City of Parkersburg at the time of the crimes and continue to be within the city's limits.  (# 8, Ex. 9 at 75-81).  This testimony was offered in opposition to Petitioner's claim that Detective Martin was without jurisdiction to investigate the crimes or to execute the search warrant and to arrest Petitioner.

Petitioner, who was represented by counsel, Judith Isner, testified about various issues in support of her habeas corpus petition.  Her testimony will be discussed as necessary _infra_.

### STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In _Williams v. Taylor_, 529 U.S. 362, 412-13 (2000), the Supreme Court of the United States held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts.  The Court further held that under the "unreasonable application" test, a federal court may

18

grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case.  Id. at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings.  See, e.g., Blackledge v. Allison, 431 U.S. 63, 81 (1977); Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991).  Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

In the body of his Memorandum of Law (although not in the title), Respondent also moves to dismiss any claims in Petitioner's section 2254 petition that fail to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  The undersigned has addressed the merits of each of the claims raised in Petitioner's federal petition, and has determined, in accordance with Rule 56, that Respondent is entitled to judgment as a matter of law on each of Petitioner's claims. Thus, there is no need to address Respondent's Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6).

## ANALYSIS

### A.    Ground 1 - Lack of jurisdiction.

In Ground 1 of her federal petition, Petitioner alleges that the investigating officer, Parkersburg Police Detective Joe Martin, "had no territorial or statutory jurisdiction to investigate, execute the search warrant or arrest the Defendant." (# 2, Attach. 1 at 2).  Petitioner asserts that the locations where the subject checks were passed were not within the territorial limits of the City of Parkersburg, that Petitioner's residence, where the search warrant was executed, was not within the limits of the City of Parkersburg, and that the victims' residence, from where the checks were allegedly stolen, was not within the limits of the City of Parkersburg.  Therefore, Petitioner contends that Detective Martin had no authority to investigate the crimes, to execute the search warrant, or to arrest Petitioner.

Respondent's Motion for Summary Judgment asserts that this claim was fully and fairly litigated before the state courts, and is purely a matter of state law and, thus, is not cognizable in

federal habeas corpus, absent a showing that the alleged violation of state law infringed upon a specific federal constitutional right. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). (# 9 at 12).

The state habeas court addressed this claim in conjunction with Petitioner's claim that his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure. The state habeas court found as follows:

> Petitioner's claim that her conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure is barred under W. Va. Code § 53-4A-1(b)(c) [1967] as previously and finally adjudicated. The Court addressed and ruled on Petitioner's claim during pre-trial motions, at trial, and as part of Petitioner's Motion for New Trial.

> However, even if the claim was not barred under W. Va. Code § 53-4A-1(b)(c) [1967] Petitioner's claim would fail. Petitioner contends that Detective Martin, a detective for the Parkersburg Police Department, had no authority or jurisdiction to execute a search warrant upon her residence at Route 3, Box 176, Lubeck Gardens, in Wood County, West Virginia due to the fact her residence was located outside the city limits of Parkersburg. W. Va. Code § 8-14-3 states in part:

> > *In order to arrest for the violation of municipal ordinances and to all matters arising within the corporate limits and coming within the scope of his official duties, the power of any chief, policeman, or sergeant shall extend anywhere within the county or counties in which the municipality is located . . . (emphasis added).*

> Therefore, when Detective Martin acting as a detective for the Parkersburg Police Department executed the search warrant he was well within the scope of his employment and official duties. Detective Martin's investigation arose out of the city of Parkersburg as he received a

21

complaint at the Parkersburg Police Department, located
in downtown Parkersburg from Mr. Smith, one of the
victims, regarding checks drawn on the victim's bank
account at BB&T a bank with various locations within the
city limits of Parkersburg.

Through various testimony both at trial and during
Petitioner's Omnibus Hearing held before the Court on the
22nd day of November 2006 it has been well established
that other victims namely Office Depot and Wal-Mart where
[sic; were] located at the time of the crime and remain
located within the city limits of Parkersburg.   When
Detective Martin executed the search warrant, he was
acting as an officer employed by the municipality of
Parkersburg located within Wood County properly executing
his duties within the county limits of Wood County.

(# 8, Ex. 6 at 5-6).

Petitioner has not demonstrated that Detective Martin lacked
jurisdiction or authority to investigate Petitioner's case, to
execute the search warrant at Petitioner's home, or to arrest
Petitioner, or that Detective Martin's conduct in any way violated
Petitioner's federal constitutional rights.   Accordingly, the
undersigned proposes that the presiding District Judge **FIND** that
Petitioner has not demonstrated that the state courts' decisions
denying her habeas corpus relief on this claim were contrary to, or
an unreasonable application of, clearly established federal law,
and that Respondent is entitled to judgment as a matter of law on
Ground 1 of Petitioner's federal petition.

### B.   Ground 1(a) - Ineffective Assistance of Counsel.

Petitioner's section 2254 petition lists ineffective
assistance of counsel as a ground for relief in Ground 1(a) of the
form petition.   However, Petitioner has not asserted any specific

22

facts or authority in support of her claim.  The Supreme Court addressed the right to effective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Court adopted a two-pronged test for determining whether a defendant was provided inadequate assistance of counsel.  The first prong is competence; Petitioner must show that the representation fell below an objective standard of reasonableness.  466 U.S. at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  Id. at 688-89.

> In order to meet the first prong, a defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id. at 690.

The second prong is prejudice; "[Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  The AEDPA "adds a layer of respect for a state court's application of the legal standard." Holman v. Gilmore, 126 F.3d 876, 881 (7th Cir. 1997).

Respondent did not address this ground for relief in his Motion for Summary Judgment. Nevertheless, because Petitioner has not identified any particular conduct of her counsel that she believes to have fallen below the standard of reasonableness, Petitioner is not entitled to any relief on this basis, and the state habeas court so found. The Opinion Order denying Petitioner's state habeas petition states:

> Petitioner has failed to identify any specific actions taken by trial counsel, Carl Bryant, which were so unreasonable that no other reasonable attorney would have acted in such a way under similar circumstances or state any specific actions taken by trial counsel, Carl Bryant, which had it not been for Mr. Bryant making such unprofessional errors would have caused a different result in Petitioner's underlying felony case. Therefore, in order to refrain from engaging in hindsight or second-guessing trial counsel's strategic decisions the Court must find after a review of the case file in Petitioner's underlying felony case, 04-F-24, that trial counsel, Carl Bryant, provided Petitioner with effective assistance of counsel for the duration of her case.

(# 8, Ex. 6 at 4).

The undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly-established federal law, and that Respondent is entitled to judgment as a matter of law on this ground for relief.

### C.   Grounds 2 and 3 - Sufficiency of Evidence.

In Grounds 2 and 3 of her federal petition, Petitioner asserts that there was insufficient evidence to support her convictions.

24

Within Ground 2, Petitioner makes four additional claims.  First, she asserts that the evidence admitted at trial, specifically the copies of the checks that were allegedly uttered, were contrary to the Best Evidence Rule, because the State admitted illegible copies of the checks, when it could have obtained the original checks. Second, Petitioner asserts that one of the State's witnesses, Angela James, made an unreliable identification of Petitioner as the person who uttered the check at Office Depot because she was unable to positively identify the laptop computer introduced at trial as the one purchased with the uttered check, and because Ms. James testified that Petitioner frequently shopped in the store, and Ms. James could have been mistaken about the date she remembered seeing Petitioner.  Third, Petitioner asserts that there was absolutely no testimony or evidence identifying Petitioner as the person who passed the Smiths' checks for purchases at Wal-Mart or Lowe's, in order to support Petitioner's convictions on the uttering counts involving checks allegedly uttered at either of those retail chains.  Fourth, Petitioner asserts that the trial court's admission of the still pictures printed from the videotape from Lowe's were admitted in error because there was no proper foundation for the photographs, the State failed to introduce or admit the videotape itself, and the State failed to establish a proper chain of custody concerning the evidence in support of her conviction; particularly the receipts allegedly found in

25

Petitioner's purse.

Respondent's Memorandum of Law in support of his Motion for Summary Judgment contends:

> In support of this claim, Petitioner does not attack the sufficiency of the evidence, but rather the admissibility of crucial evidence in violation of state rules of evidence. This is insufficient to state either a federal claim or a claim of insufficiency of the evidence.

(# 9 at 13). Respondent then cites to the state habeas court's findings which state:

> Petitioner has identified specific pieces of evidence which she feels should not have been admitted into evidence. However, as repeatedly stated throughout this Opinion "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syllabus point 4 of <u>State ex. rel McMannis v. Mohn</u>, 163 W. Va. 129, 254 S.E.2d 805 (1979). Additionally as cited in by the Supreme Court in <u>Hatcher v. McBride</u>, "Absent 'circumstances impugning fundamental fairness or infringing specific constitutional protection,' admissibility of evidence does not present a state or federal constitutional question." --S.E.2d--, 2006 WL 3456480 (W. Va.) citing <u>Grundler v. North Carolina</u>, 283 F.2d 798, 802 (4th Cir. 1960).
>
> Therefore, "[s]tate court evidentiary rulings respecting the admission of evidence are cognizable in habeas corpus only to the extent they violate specific constitutional provisions or are so egregious as to render the entire trial fundamentally unfair and thereby violating due process under the Fourteenth Amendment." <u>Hatcher</u> at ---, citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed.2d 385 (1991); <u>Spencer v. Murray</u>, 5 F.3d 758, 762 (4th Cir. 1993); <u>Howard v. Moore</u>, <u>supra</u>; <u>Burket v. Angelone</u>, 208 F.3d 172, 186 (2000).
>
> Petitioner has failed to state any specific violation of her constitutional rights during her trial due to the admission of the above mentioned evidence that would have rendered her trial fundamentally unfair. Petitioner's allegations can only serve to allege the

jury convicted her based on circumstantial evidence without corroborating physical evidence.

* * *

The jury convicted Petitioner based on the evidence and testimony presented at trial.  The Court would find Petitioner was unable to meet her burden in proving by a preponderance of the evidence that reasonable minds could not have reached the same conclusion in convicting Petitioner of four (4) counts of uttering.

(# 8, Ex. 6 at 7-8).

In reviewing the sufficiency of the evidence to support a state criminal conviction on a due process challenge in a federal habeas proceeding, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  (# 9 at 14).  As further noted by Respondent, the court does not re-try the evidence or re-determine the credibility of the witnesses.  See Wright v. West, 505 U.S. 277, 296 (1992); Marshall v. Lonberger, 459 U.S. 422, 434 (1983). (Id.)

Respondent's Memorandum of Law further states:

At trial, photographs taken from a store surveillance camera showing Petitioner in the store where [one of] the victims' check[] [was] passed were introduced as evidence.  (Resp't Ex. 8 at 200.)  The store clerk who conducted the transaction involving the uttered check[] testified that she identified Petitioner from a series of photographs shown to her by Detective Joe Martin of the Parkersburg Police Department as the person who wrote the check[].  (Id. at 164.)  Detective Martin testified that after the store clerk identified Petitioner, he obtained

27

a search warrant for Petitioner's apartment.  Listed in
the warrant was the merchandise bought with the victims'
checks and listed on the copies of the receipts given to
him by the stores.  (Id. at 200-06.)  Detective Martin
testified that during the execution of the search warrant
at Petitioner's apartment he found several of the items
listed on the store receipts including a computer that
was found in Petitioner's dryer.  The original copies of
the receipts given to Detective Martin by the stores were
found in Petitioner's purse.  (Resp't Ex. 8 at 226.)
Detective Martin testified that the check numbers listed
on the receipts given to him by the stores matched the
check numbers on the stolen checks and the check numbers
on the receipts found in Petitioner's purse.  (Id. at
229-31.)

A signed confession was all the jurors lacked in
this case.  The evidence at trial was not only sufficient
to convict, it was overwhelming.  Almost any single piece
of evidence standing alone would be sufficient to
convict. * * * Petitioner has failed to provide any
argument that the rulings of the state court were in
contravention of controlling federal precedent.

(# 9 at 14-15).

In Petitioner's Response to Respondent's Motion for Summary
Judgment, Petitioner argues that Respondent's summary of the
evidence supporting her conviction is misleading because one of the
receipts found in her purse was an Office Depot receipt that did
not match the store receipt for the computer and had nothing to do
with the crimes being investigated.  (# 10 at 8).  Petitioner also
asserts that Respondent's Memorandum of Law discusses the
surveillance photographs from the Lowe's store as if there were
photographs from other stores as well, when there were not.

The undersigned agrees that much of Petitioner's argument in
Ground 2 of her federal habeas petition concerns matters of state

evidentiary and procedural law that do not implicate a federal constitutional right. However, the undersigned will address Petitioner's arguments in subsection (C) of Ground 2 concerning the alleged lack of evidence to support her convictions.

The jury heard testimony from Angela James, who gave an eye-witness identification of Petitioner as the person who purchased the Toshiba computer at Office Depot on July 21, 2003, with a check written on the Smiths' account. The jury was also presented with a receipt from Office Depot documenting that purchase. Furthermore, the same model Toshiba computer was found in a dryer in Petitioner's residence.

The jury was also presented with evidence that receipts from the other transactions involving the Smiths' checking account were found in Petitioner's purse. Furthermore, the jury was able to review the photographs made from a video taken at Lowe's, which the State argued depicted Petitioner making a purchase using the Smiths' check. Thus, there was ample evidence to support Petitioner's convictions.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that no rational trier of fact could have found Petitioner guilty of her crimes of conviction based upon the evidence presented at Petitioner's trial. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas

corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly-established federal law, and that Respondent is entitled to judgment as a matter of law on Petitioner's claim that there was insufficient evidence to support her convictions, as state in Grounds 2 and 3 of her federal petition.

**D.   Grounds 2(a) and 4 - Search and seizure issues.**

In Ground 2(a) of her federal petition, Petitioner contends that her convictions were obtained by use of evidence gained pursuant to an unconstitutional search of her home.  In Ground 4 of her federal petition, Petitioner asserts that the affidavit offered by Detective Martin in support of the application for the search warrant was insufficient.  Petitioner further addressed Ground 4 in her "Brief" in support of her federal petition as follows:

> In the case at hand, the affidavit contains conclusory statements by a police officer (1) with no dates as to when checks were stolen; (2) with no dates as to when either check was used to make purchases at local businesses; (3) with no information on how he was able to identify the Defendant; and (4) with no information on how he had previously known Defendant (see petitioner's exhibit # 9).

(# 2, Attach. 1 at 14).

Respondent's Memorandum of Law contends that the search and seizure issues were fully and fairly litigated in Petitioner's underlying criminal proceedings and, therefore, Petitioner is barred from consideration of such claims by this federal court. See Stone v. Powell, 428 U.S. 465, 482 (1976).  (# 9 at 18).  The

30

undersigned agrees.

Petitioner moved to suppress the evidence seized from her residence prior to trial.  An evidentiary hearing was held on the suppression motion, and the trial court determined that the affidavit in support of the search warrant was sufficient on its face and that there was probable cause for issuance of the warrant.

As argued by Respondent, the Supreme Court has held that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced." Stone v. Powell, 428 U.S. 465, 482 (1976).

Petitioner's Fourth Amendment claims were fully and fairly litigated prior to her trial, and were again addressed in her petition for appeal, which was denied.  Petitioner then raised these same issues in her Wood County habeas corpus petition.  In that proceeding, the Circuit Court found that Petitioner's claim alleging that the evidence against her was gained pursuant to an unconstitutional search and seizure was "previously and finally adjudicated." (# 8, Ex. 6 at 5).  Thus, under Stone, Petitioner's Fourth Amendment claims are barred from consideration in federal habeas corpus.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner's Fourth Amendment claims are not cognizable in federal habeas corpus, and that Respondent is entitled to judgment as a matter of law on Grounds 2(a) and 4.

### E.   Ground 3(a) - Motion for Mistrial.

In Ground 3(a) of her federal petition, Petitioner asserts that the trial court erred in denying a motion for a mistrial made by Petitioner's counsel during the testimony of the investigating officer, Detective Joe Martin.   Petitioner's "Brief" in support of her petition states in pertinent part:

> In the case at hand, when Detective Martin was asked if he had taken any handwriting samples of the Defendant to compare with the handwriting on the checks that were uttered, he stated that he already had some in his office and did not take any on that day (my emphasis). Detective Martin's testimony was highly prejudicial to the Defendant.   Defense counsel made a motion for a mistrial (see trial tr pg 252 lines 8 thru 24, pg 253 lines 1 thru 7) out of the presence of the jury on the basis that the officer's answer was not responsive to the question and that the officer's statement that he already had some of her handwriting in his office clearly demonstrated to the jury that she had previously been questioned or arrested for some previous crime in which she had given handwriting samples.
>
> * * *
>
> In the case at hand, the court erred in denying the Defendant's motion for a mistrial (see trial tr pg 254 line 24, pg 255 line 1) as there was no curative alternative available to remove from the minds of the jurors the highly prejudicial statement made by the police officer.

(# 2, Attach. 1 at 12-13).

Respondent's Memorandum of Law addresses this claim as follows:

A jury's exposure to extraneous material or otherwise inadmissible evidence can affect the fairness of a trial: "A defendant's Sixth Amendment rights are put in jeopardy when facts appear before a jury that were not developed at trial.   Such extraneous influence may threaten the guarantee of an impartial jury . . . ." Gall v. Parker, 231 F.3d 265, 334 (6th Cir. 2000). However, determining whether a mistrial should be granted based on a claim of a jury's exposure to potentially prejudicial information is a fact-specific determination entitled to great deference by a reviewing court. "Importantly, there is no Supreme Court authority clearly articulating the specific circumstances under which an extraneous influence might prejudice a juror, and 'each case must turn on its special facts.'" McNeil v. Polk, 276 F.3d 206, 226 (4th Cir. 2007), citing Marshall v. United States, 360 U.S. 310, 312 (1959)

(# 9 at 16).  Respondent then addresses the specific circumstances leading to Petitioner's motion for a mistrial:

In this instance, Petitioner claims that remarks made by a law enforcement witness referring to evidence in his possession prior to investigating the instant crimes prejudiced the jury by ostensibly informing them of Petitioner's prior conviction and incarceration in the penitentiary for ten counts of uttering.  See State v. Greene, 534 S.E.2d 395 (W. Va. 2000).

At trial, during cross-examination, trial counsel was questioning a law enforcement officer who investigated the case:

Defense:  When you searched the residence, did you find any missing checks that belonged to the [victims]?

Witness:  No I did not.

Defense:  Did you take possession of any handwriting of the Defendant to compare it with --

33

               Witness:  I already had some in my office, but
                         no, I did not that day.

(Resp't Ex. 8 at 252.)

      Petitioner was not charged with forgery.  It is
unclear from the line of questioning why defense counsel
questioned the witness about handwriting samples when
forgery was not at issue.  Aside from the fact that it
was defense counsel who elicited the response from an
irrelevant line of questioning, there is no indication in
the contents of the testimony that the jury could have
gathered from the witness's answer that Petitioner had a
long history of passing forged instruments or that she
was convicted and served time for a contract killing or
that she had threatened a law enforcement officer.
(Resp't Ex. 8 at 7-10.)  The remark was fleeting at best.
In light of the almost substantial amount of evidence of
guilt presented at trial, any effect the witness's
statements would have had would have been harmless even
if the jury had been able to discern from the statements
that Petitioner was a career criminal.

(# 9 at 17).

     The state habeas court did not specifically address this claim in its Opinion Order.  When a state court fails to address an issue, or fails to articulate a rationale behind its ruling, the federal courts "must independently review the record and the applicable law; however, the review is not a de novo review.  See Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000).  Rather, it is a deferential review to determine if the state court's decision is legally and factually reasonable.  Id.  The undersigned will conduct such a review of the merits of this ground for relief.

     Petitioner's federal petition did not contend that the court's alleged error in denying her motion for a mistrial denied any specific federal constitutional right.  However, to the extent that

Petitioner is claiming that Detective Martin's statement denied her due process or a fair trial, the undersigned proposes that the presiding District Judge **FIND** that such a claim lacks merit. Detective Martin's response was invited by Petitioner's counsel's question about whether Detective Martin had obtained a handwriting sample. Detective Martin did not state how he gained possession of a sample of Petitioner's handwriting, nor did he in any way mention any prior investigations or prosecutions of Petitioner. He merely stated that he already had a handwriting sample at his office.

The undersigned proposes that the presiding District Judge **FIND** that any error in the trial court's denial of Petitioner's motion for a mistrial, or in the failure to give a cautionary instruction to the jury regarding Detective Martin's statement, was harmless and did not impugn the fundamental fairness of Petitioner's trial. The undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on this ground for relief.

**F.   Ground 5 - Challenges to grand jury proceedings.**

In Ground 5 of her federal petition, Petitioner raises various claims concerning the grand jury proceedings that resulted in her indictment on five counts of uttering. Specifically, Petitioner makes the following claims:

> (A)   The State failed to subpoena available declarant of statements and offered only hearsay evidence to the grand jury.

35

>    (B)   The State failed to give prior notice of their
>          intent to use hearsay testimony.
>
>    (C)   Testimony of State witness inadmissible under WV
>          Rules of Evidence.
>
>    (D)   Defendant denied due process and the right to
>          confront her accusers.
>
>    (E)   Evidence does not support finding of a True Bill.
>
>    (F)   Failure of court to allow the presence of the
>          accused at grand jury, denied her right of due
>          process as guaranteed by U.S. and WV Constitution.
>
>    (G)   The State used the accused's pre-trial silence as
>          evidence against her.

(# 2, Attach. 1 at 15).

Respondent's Memorandum of Law asserts that Petitioner's claims concerning the grand jury proceedings are meritless because there is no federal constitutional right of a state prisoner to be indicted by a grand jury, and Petitioner has only raised issues concerning state evidentiary rules and constitutional protections not applicable to grand jury proceedings.   (# 9 at 18). Respondent's Memorandum of Law further states:

> The Supreme Court has concluded that neither the Grand
> Jury Clause of the Fifth Amendment nor the Due Process
> Clause of the Fourteenth Amendment requires the state to
> afford the accused the right to grand jury review before
> trial.  Hurtado v. California, 110 U.S. 516, 534-35
> (1884).   Likewise, any defect in the grand jury
> proceedings are rendered harmless following a conviction
> by jury.  See United States v. Mechanik, 475 U.S. 66
> (1986)("the petit jury's verdict rendered harmless any
> conceivable error in the charging decision that might
> have flowed from the violation." Id. at 73.)

(Id. at 18-19).

36

The state habeas court did not specifically address this claim in its Opinion Order.  Petitioner raised this claim only as an additional ground under <u>Losh v. McKenzie</u>, so as not to be waived, and did not provide any further support for the claim in her Amended Petition.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated a denial of her due process or any other federal constitutional rights resulting from Petitioner's grand jury proceedings, and that the jury's guilty verdict rendered any such alleged errors harmless.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on this claim.

### G.   Ground 5(a) - Excessive Sentence.

In Ground 5(a) of her federal petition, Petitioner contends that her sentences are excessive and disproportionate to the severity of the offense charged.  Petitioner did not address this claim in the "Brief" in support of her petition, and Respondent did not address this claim in the Motion for Summary Judgment.

The state habeas court made the following findings concerning this ground for relief:

>        In   determining   whether   a   sentence   is disproportionate, cruel and unusual in violation of the US Constitution and the Constitution of West Virginia two tests are applied:

The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society.  If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further.  When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test.  State v. Cooper, 172 W. Va. 266 [272], 304 S.E.2d 851, [] (1993).

The objective test was set forth in Syllabus Point 5 of Wanstreet: In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted within other jurisdictions, and a comparison with other offenses within the same jurisdiction. Wanstreet v. Bordenkircher, 166 W. Va. 523, 276 S.E.2d 205 (1981), as cited in State v. David D.W., 214 W. Va. 167, 588 S.E.2d 156, 166 (2003).

The Court finds Petitioner's sentence does not "shock the conscience." Sentencing is a matter left to the sole discretion of the Court. In Petitioner's case, the Court had the knowledge gained from listening to the evidence and testimony at trial and from inspecting the pre-sentence report prepared by adult probation to use in determining Petitioner's sentence. The Court may note that Petitioner's pre-sentence report contained nineteen (19) prior felony convictions mostly relating to forgery and uttering. In addition, the pre-sentence report contained a jury conviction on two (2) counts of Attempted 1st Degree Murder and two (2) counts Conspiracy to Commit 1st Degree Murder involving charges that the Petitioner contracted with a man to kill her boyfriend's wife and his thirteen (13) year old son. Based on Petitioner's past criminal history and in the interest of protecting the public the Court sentenced the Petitioner to four (4) consecutive and one (1) concurrent sentence with an effective sentence of four (4) to forty (40) years.

> The Court feels Petitioner['s] sentence was within the Court's discretion and that Petitioner's sentence was in line with other punishments for similar offense[s] within other jurisdictions and within the same jurisdiction. Therefore, the Court finds Petitioner's sentence did not violate his rights against disproportionate, cruel and unusual punishment.

(# 8, Ex. 6 at 9-10).

The Eighth Amendment provides a narrow proportionality guarantee in non-capital cases, which forbids only "extreme sentences" that are "grossly disproportionate" to the crime. Harmelin v. Michigan, 501 U.S. 957, 996-997, 1001 (1991). In a badly-splintered plurality opinion, the Court restricted proportionality review to the "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005.

Justice Kennedy, concurring in the opinion, identified four "principles of proportionality review" which were common to the Court's jurisprudence: (1) the primacy of the legislature; (2) the variety of legitimate penological schemes; (3) the nature of our federal system; and (4) the requirement that proportionality review be guided by objective factors. Id. at 998-1001.

In Ewing v. California, 538 U.S. 11 (2003), the Supreme Court again addressed the issue of disproportionate sentences under the Eighth Amendment, applying the proportionality principles recognized in Justice Kennedy's concurrence in Harmelin to a sentence imposed under California's three strikes rule. The Court

found that Ewing's sentence of 25 years to life for felony grand theft was not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 30. (quoting Harmelin, 501 U.S. at 1005).

Petitioner was sentenced within the limits of the statute under which she was convicted, and a sentence imposed within statutory limits is generally not subject to habeas review. Townsend v. Burke, 334 U.S. 736, 741 (1948). This court cannot find that sentences that are within the limits set by the state legislature shock the conscience of the court or society. Furthermore, the trial court was within its discretion to run the sentences consecutively. Petitioner has not demonstrated that her sentences were grossly disproportionate to her crimes of conviction, particularly when her prior criminal record is considered.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that her sentences constitute cruel and unusual punishment, or that they in any way violate her federal constitutional rights. The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to

40

judgment as a matter of law on this claim.

**H.  Ground 6 - Cumulative error.**

In Ground 6 of her federal petition, Petitioner contends that errors in her criminal proceedings, taken collectively, resulted in a denial of various federal constitutional rights.  However, Petitioner has not shown how any trial errors, individually or cumulatively, deprived her of a federal constitutional right, and Petitioner has not specified any clearly-established Supreme Court precedent holding that cumulative trial errors which have not been shown to have had a "substantial and injurious effect or influence in determining the jury's verdict" can form the basis for federal habeas relief.

In Fisher v. Angeleone, 163 F.3d 835, 852 (4th Cir. 1998), the Fourth Circuit held that "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error . . . ."  Thus, in order for a cumulative error analysis to apply, the court must first find that there have been actual constitutional errors.

Petitioner's claim of cumulative error stems from claims which the court has previously found to be non-errors.  Because the court has already found that there were no violations of Petitioner's federal constitutional rights, to the extent that Petitioner raises (as a basis for cumulative error) claims already addressed by the court, those claims lack merit as well.

41

The court proposes that the presiding District Judge **FIND** that Petitioner was not denied a fair and impartial trial based on the cumulative effect of any alleged errors asserted by Petitioner in her federal petition, and that the state courts' decisions were neither contrary to, nor an unreasonable application of, clearly established federal law.   Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on this ground for relief.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion for Summary Judgment (# 8) and **DENY AS MOOT** Respondent's Motion to Dismiss, contained in Respondent's Memorandum of Law in support of his Motion for Summary Judgment (# 9).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which

42

objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and counsel of record.

| | |
|---|---|
| _November 14, 2008_ | _Mary E. Stanley_ |
| Date | Mary E. Stanley |
| | United States Magistrate Judge |